# FRANK RUTKOSKI *vs.* STANLEY ZALASKI.

First Judicial District, Hartford, October Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and GREENE, JS.

As between owners of adjoining land of different elevations, the lower proprietor is not bound to receive surface-water which naturally flows from the adjacent premises, but may grade and fill in his lot without liability to the upper landowner for obstructing such flow.

A landowner who digs a drainage ditch on his own land so close to the boundary line that his neighbor's soil crumbles away under its own weight and falls into the ditch, is liable in damages to the latter for such injury. But this right of lateral support extends to the adjacent land only in its natural condition, unburdened by any artificial structure placed thereon; and the question whether the neighbor's soil caved in of its own weight or because of the existence of a structure thereon—in this case a wire and post fence—is one of fact for the determination of the trial court.

A restraining order appropriate to issues presented by the answer and counterclaim may issue in favor of the plaintiff, if covered by his prayers for relief, notwithstanding that particular subject-matter was not mentioned in the complaint.

In the present case the defendant dug a ditch close up to his boundary line to carry off the surface-water from his land, and the water flowing therein caused the plaintiff's soil to disintegrate and drop into the ditch. The decree restrained the defendant from maintaining the ditch in any form, and from carrying off the surface-water by any means which would injure or displace any of the plaintiff's land. *Held* that this sweeping prohibition was unjust to the defendant and afforded unnecessary protection to the plaintiff; and that the decree should be so modified as merely to prohibit the defendant from maintaining a ditch or excavation upon his own land in such way as to cause the plaintiff's soil to crumble or fall away, under its own weight, upon the land of the defendant.

It is the nature of the injury to land rather than the magnitude of the damage inflicted, which leads courts of equity to extend protection by way of injunction.

A severable judgment may be set aside as to its erroneous part and affirmed in other respects.

Argued October 5th, 1915—decided January 27th, 1916.

ACTION against an adjoining landowner to recover damages for his alleged wrongful act in digging a trench

along the boundary line and thereby depriving the fence posts, standing upon the plaintiff's land, of lateral support and causing them, and the earth about them, to fall into such trench, and praying for an injunction to restrain the defendant from maintaining such trench or ditch,—brought to and tried by the District Court of Waterbury, *Reeves, J.;* facts found and judgment rendered for the plaintiff for $10 damages and an injunction as prayed for, from which the defendant appealed. *Error in part.*

*Epaphroditus Peck* and *James T. Mather,* for the appellant (defendant).

*William J. Malone,* for the appellee (plaintiff).

RORABACK, J. The parties to this action are owners of adjoining village lots, with a dwelling-house upon each lot. Both lots are on the slope of a hill. The plaintiff's lot, before it was graded, was lower than that of the defendant. The surface-water naturally flowed down from the hillside over and across the defendant's lot and then on and across the rear of the lot of the plaintiff. In August, 1911, the plaintiff built a substantial wire fence upon his boundary line between these two lots. In the summer of 1913 the plaintiff so graded his lot that the surface-water before referred to could not pass over and upon his land. It was so obstructed that it was confined to the defendant's lot. The defendant, also, graded a portion of his lot from the front thereof to a point just back of the rear underpinning of his house. The defendant's lot, in the rear of his house, is about two and one half feet below the level of that part which has been graded. In the rear of the defendant's lot there are several fruit trees, a hen-house, and an outhouse. In September,

1913, the defendant dug a trench upon his land immediately adjoining the boundary line between him and the plaintiff. This trench was about one hundred feet long, and was intended to carry off the surface-water in question. This water did not flow in any well defined channel, but flowed across the land of both parties as mere surface-water. It flowed for a large portion of the year, sometimes in considerable volume. As a result of the digging of this trench, and the same being used for the passage of this surface-water, several cubic feet of the soil of the plaintiff's land fell into the trench and were carried away by the water which passed through it. Five or six of the fence posts were in the same manner undermined, and sagged toward the defendant's property. The land of the plaintiff is being carried away by the erosive action of the water in flowing through this trench. The defendant refuses to employ any means to protect the plaintiff's land, although requested to do so. This water would not have flowed back across the defendant's land were it not for the manner in which the plaintiff has graded his land. The trial court has found that the defendant could drain the rear of his premises by placing a tile drain across his land, or by regrading his lot.

The court rendered judgment for the plaintiff to recover $10 damages, and granted an injunction "restraining the defendant from continuing to carry off the surface-water from the rear of the defendant's land heretofore described, by any means which will injure or displace any of the above described land of the plaintiff"; also "an injunction restraining the defendant from maintaining the above described ditch."

One question presented by the defendant's reasons of appeal is whether the plaintiff, for the purpose of improving his own land, could lawfully obstruct the natural flow of the surface-water which had formerly

flowed from the defendant's land upon the lot of the plaintiff. This question has been decided in different ways in different States. Some have adopted the civil-law rule upon this subject. By that law "the right of drainage of surface-waters, as between owners of adjacent lands, of different elevations, is governed by the law of nature. The lower proprietor is bound to receive the waters which naturally flow from the estate above, provided the industry of man has not created or increased the servitude." *Barkley* v. *Wilcox*, 86 N. Y. 140, 145. Our court has rejected this doctrine and accepted the common-law rule, which, in Gould on Waters (3d Ed.) § 267, is stated to be as follows: "The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." *Chadeayne* v. *Robinson*, 55 Conn. 345, 350, 11 Atl. 592.

The defendant also contends that the trial court erred in holding that the defendant was liable for damages for the deprivation of the lateral support of the plaintiff's land. The general rule upon this subject is that "every landowner has a right to have his land preserved unbroken, and that an adjoining owner excavating on his own land is subject to this restriction, that he must not remove the earth so near to the land

of his neighbor that his neighbor's soil will crumble away under its own weight and fall upon his land. But this right of lateral support extends only to the soil in its natural condition. It does not protect whatever is placed upon the soil increasing the downward and lateral pressure. If it did, it would put it in the power of a lot-owner, by erecting heavy buildings on his lot, to greatly abridge the right of his neighbor to use his lot. It would make the rights of the prior occupant greatly superior to those of the latter." *Northern Transportation Co.* v. *Chicago,* 99 U. S. 635, 645, 25 L. Ed. 336, 339; *Ceffarelli* v. *Landino,* 82 Conn. 126, 72 Atl. 564; *Trowbridge* v. *True,* 52 Conn. 190; *Gilmore* v. *Driscoll,* 122 Mass. 199; 1 Corpus Juris, 1214, and cases cited in note 27. It is insisted, however, that this line fence materially increased the pressure of the plaintiff's land against the defendant's soil. In cases involving the question of lateral support, it is undoubtedly true that trial courts in many cases have great difficulty in determining whether the superstructure causes the soil to cave in. This question in the present case, as presented to the court below, was a question of fact, which the judge decided adversely to the contention of the defendant. We find nothing in the record inconsistent with the ultimate decision of the trial court upon this branch of the case. Obviously we cannot hold, as matter of law, that the fence erected by the plaintiff was a structure which would of its own weight so incumber the soil as to deprive the owner of his right to recover. *Oneil* v. *Harkins,* 71 Ky. (8 Bush) 650.

It is true, as the defendant contends, that the plaintiff's alleged cause of action is a claim for damages and an injunction on account of a deprivation of lateral support to his land. Surface-water is not mentioned in the complaint. The defendant, in his answer

and counterclaim, raised the issues upon this point. As we have seen, the plaintiff in his claims for relief asked for a restraining order very broad in its terms, against the improper diversion of surface-water by the defendant. It does not appear that the defendant, in the trial of the case below, made any claim that the facts alleged in the complaint did not warrant the relief asked for. No such question is presented by the reasons of appeal. Under such circumstances it is enough to say that, in so far as the relief is asked for, the pleadings gave the court below the right to pass upon it. This is not a case in which the trial court, against objection, went outside the pleadings and assumed to deal with matters not in issue and granted relief which was not claimed.

In reaching this conclusion we do not mean to hold that, upon the facts found, the court below was warranted in granting an injunction in the terms of the one now before us. It absolutely restrains the defendant from maintaining the ditch in question, in any form, upon his own land. Such an order is so severe in its consequences that it should not have been granted under the facts as they appear. The trial court has found that this water flows most of the time and at certain periods in considerable volume. It is clear that the defendant, in digging this ditch, was making an honest effort to protect his property against serious damage from this water. From the lay of the land, as portrayed in the finding, and the amount and character of this water, it is apparent that the defendant can protect himself against serious damage by the maintenance of a ditch, or some kind of an excavation, upon his land, at or near the location of the one now under consideration. A single tile drain across the defendant's lot would hardly collect the water which spreads across the land of both parties. To hold that the

defendant should be compelled to regrade his lot to meet existing conditions would unjustly impair the defendant's right to the enjoyment of his property in the future.

The facts found were sufficient to warrant the court below in finding for the plaintiff upon the question of damages. The defendant contends, however, that the trial court should not have granted the plaintiff any equitable relief, as it appears from the finding and the judgment-file that the acts complained of were mere acts of trespass, which caused damage only in a small amount. The adequacy of damages is a matter to be considered in cases of this nature, but it is not by any means a decisive question. It is the nature of the injury, rather than the magnitude of the damages inflicted, that leads courts of equity to protect lands, by injunction, against an injury of the character now in question. *Trowbridge* v. *True*, 52 Conn. 190, 199. High on Injunctions (4th Ed., Vol. 1, § 723) says: "The jurisdiction of the court in this class of cases does not depend on the value of the property destroyed, but on the question whether its destruction would materially impair the enjoyment of the property as held and occupied at the time of the commission of the trespass."

As we have already stated, that portion of the injunction which absolutely restrains the defendant from maintaining the ditch in question upon his own land is unjust to the defendant and affords unnecessary protection to the plaintiff. The injunction should only prohibit the defendant from maintaining a ditch or excavation which would cause the plaintiff's soil to crumble or fall away, by its own weight, upon the land of the defendant. Under a restraining order in this form the defendant would be at liberty to enjoy the use of his own land as he pleases, at the risk of being

held in contempt for violating the injunction in case the excavation should result in an injury to the plaintiff's land in the manner above stated.

The judgment of the trial court, therefore, is erroneous to the extent just indicated. A severable error, however, in a judgment, does not necessarily vitiate the whole judgment. That portion of the judgment which is erroneous may be set aside and that part which is lawful may be affirmed. *Dunbar* v. *Jones*, 87 Conn. 253, 261, 87 Atl. 787. As the case was fully tried on its merits in the court below, and the erroneous part of the judgment can be separated with precision from the rest, it seems that it will be for the best interests of all parties that the judgment should be modified rather than be reversed.

There is error in part, and the cause is remanded to the District Court of Waterbury with directions to modify the judgment, in so far as it gives equitable relief, so that the defendant be prohibited from maintaining a ditch or excavation upon his own land in such way as to cause the plaintiff's soil to crumble or fall away under its own weight upon the land of the defendant.

In this opinion the other judges concurred.